IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAWN STANLEY                            :
                                        :
                                        :
        v.                              :       Civil No. CCB–11–2401
                                        :
                                        :
CENTRAL GARDEN AND PET                  :
            CORPORATION, and            :
                                        :
T.F.H. PUBLICATIONS, INC.               :
        d/b/a NYLABONE PRODUCTS.        :


MEMORANDUM

Plaintiff Dawn Stanley's pet, a young French bulldog named Booker, suffered an

intestinal injury after ingesting a piece of a chew toy. That toy was manufactured by T.F.H.

Publications, Inc. ("TFH"), a subsidiary of Central Garden and Pet Corporation ("Central

Garden"), and marketed under the Nylabone trade name as the Double Action Chew Toy.

Stanley alleges, among other claims, that the chew toy was defectively designed and that

defendants failed to adequately warn pet owners of the medical risks associated with it. She

seeks to sue on behalf of a class of persons who purchased Nylabone chew toys. She brings eight

claims: (1) strict liability, (2) negligence, (3) breach of implied warranties, (4) breach of express

warranties, (5) fraud, (6) violation of the Maryland Consumer Protection Act, Md. Code Ann.,

Com. Law. § 13–101, *et seq.* ("MCPA"), (7) relief under other state consumer protection laws,[1]

and (8) unjust enrichment. Now pending are the defendants' Motion to Dismiss (ECF No. 16)

and the defendants' Motion to Strike Class Allegations (ECF No. 17). The motions have been

---

[1] The claim for relief under other state consumer protection laws is pled in the alternative to the strict liability claim.

fully briefed and no hearing is necessary at this time. *See* Local Rule 105.6. For the reasons

discussed below, I will grant each motion in part and deny each motion in part.

I.      Background

Stanley has owned a French bulldog named Booker since he was eight weeks old. (Am.

Compl. ¶ 35). At some point, Stanley purchased a Double Action Chew Toy for Booker. (*Id.*).

Stanley selected the toy because of the  defendants' claims about the safety and effectiveness of

their products. (*Id.*).

On the morning of March 27, 2011, when he was just over one year old, Booker vomited.

(*Id.* ¶¶ 34, 36). Stanley refrained from feeding Booker until that evening, when he vomited up his

food so violently that Stanley rushed him to the Midway Animal Hospital in Millersville,

Maryland. (*Id.* ¶ 36). Although the hospital took x-rays, they could not locate the cause of

Booker's discomfort. Unsatisfied, Stanley took Booker to the Anne Arundel Veterinary

Emergency Clinic in Annapolis, Maryland. (*Id.* ¶ 37). That clinic reviewed Booker's earlier x-

rays and admitted him for three days for IV fluids and support. (*Id.*). On March 30, Stanley fed

Booker and he again vomited up his food. (*Id.* ¶ 38). Stanley took him to the Bayside Animal

Medical Center in Glen Burnie, Maryland. (*Id.*). That center could not locate the cause of

Booker's discomfort and merely gave him a shot for pain. (*Id.* ¶ 39). At 2:00 the next morning,

Booker began vomiting blood. (*Id.*). Stanley rushed Booker to another hospital, the Falls Road

Animal Hospital in Baltimore, Maryland. (*Id.*). That hospital took new x-rays and concluded

exploratory surgery was needed. (*Id.*). During that surgery, veterinarians located a piece of the

Double Action Chew Toy wrapped up and around Booker's small intestine. (*Id.*).

Stanley seeks to sue on behalf of a class of pet owners who also purchased Nylabone

chew toys. (*Id.* ¶¶ 40–51). Stanley alleges there are "countless examples" of similar incidents,

and that the defendants know of the hazards and defects in their chew toys. (*See id.* ¶ 27). As one example, she cites a special report by a Houston, Texas, TV station on dogs who died after ingesting Nylabone products. (*Id.*). It featured a therapy dog named Timber and a poodle named Rambo, both of whom died after ingesting pieces of Nylabone products. (*Id.* ¶¶ 27–31). In Rambo's case, the veterinarian found two pieces of the chew toy in his stomach and intestine, and explained that "When the [chew toy] hung up, the intestine keeps moving and so it kind of knotted up over it like an accordion." (*Id.* ¶ 31).

Stanley alleges the defendants have known of the medical risks of their chew toys for more than a decade. (*Id.* ¶ 32). The symptoms of ingesting a chew toy mimic an array of non-fatal intestinal problems, and because of their design the Nylabone chew toys are often not visible on x-rays. (*Id.*). Stanley alleges the defendants have received a "massive number of complaints" about the products involving "dogs from tiny to huge and old to young." (*Id.*).

Nylabone's products are some of the best-selling pet products in the world. (*Id.* ¶ 14). Its chew toys are marketed as being "especially designed" for cleaning the teeth of aggressive, powerful chewers. (*Id.* ¶ 12). The Double Action Chew Toy is marketed as having "durable ends specifically designed for powerful chewers" and "dental nubs" that "help clean your dog's teeth." (*Id.* ¶ 26). On their web site, the defendants market the toy as vet recommended. (*Id.*).

Guidelines for the chew toys are provided on the back of the packaging, under a tab that advises buyers to "review guidelines for more products and tips." (*Id.* ¶ 17). The guidelines state:

> **NON-EDIBLE CHEW PRODUCTS** (Plastic, Rubber, Nylon), although non-toxic, are NOT intended for consumption. During normal chewing, tiny bristle-like projections are raised, which help clean teeth. If are ingested [sic], they should pass through. A dog should not be able to break off large pieces of any Nylabone Non-Edible Chew. If you think your dog swallowed a large piece of a Non-Edible Chew, take the chew away and contact you [sic] veterinarian for advice.

> No dog chew toy is totally indestructible. Frequently inspect any
> chew before giving it to your dog to make sure its [sic] whole and
> intact, with no missing pieces. Replace a Non-Edible Chew when
> knuckle ends are worn down, or if it becomes too small to chew
> safely.

(*Id.*). Stanley alleges these guidelines do not adequately inform consumers of the medical risks

associated with the chew toys. She claims the warnings conceal "the fact that pieces of the Chew

Toys often break off and are ingested by dogs, and much of the time are invisible to

veterinarians." (*Id.* ¶ 19). Stanley alleges the chew toys do not "include warnings that are specific

and comprehensive as to the hazards" of their use, because, for example, they do not mention

that serious injury or death could result from ingestion. (*Id.* ¶¶ 22–23).

The front of the Double Action Chew Toy does not contain any indication of the medical

risks associated with the toy. (*Id.* ¶ 26). Instead, the middle of the packaging lists reasons why

dogs need a Nylabone DuraChew[2], stating the product: (1) "Discourages destructive chewing";

(2) "Fights boredom"; (3) "Helps clean teeth"; and (4) "Provides enjoyment." (*Id.*). The

packaging does contain a warning in bold capital letters that: "DIFFERENT DOGS HAVE

DIFFERENT CHEWING STYLES AND STRENGTHS, EVEN WITH THE SAME BREED.

BE SURE TO CHOOSE THE CORRECT CHEW SIZE AND TYPE FOR YOUR DOG." (*Id.*).

Beneath this, there is a list stating the product is: (1) "NON-EDIBLE: Bristles raised during

chewing help clean teeth and control plaque & tartar; small shavings (no longer than a grain of

rice []] should pass through"; (2) "DURABLE NYLON ENDS—Long lasting for powerful,

determined chewers"; (3) "Dogs should not bite off large pieces—replace when worn down . . ."

---

[2] Stanley refers to DuraChew and Double Action Chew Toy interchangeably. (*See* Am. Compl ¶
26).

(*Id.*). The Double Action Chew Toy has both Nylabone branding and the Central Garden logo displayed on the packaging. (*Id.* ¶ 12).

II.     Motion to Dismiss

The defendants seek dismissal of five claims: strict liability, negligence, breach of express warranty, fraud, and unjust enrichment. They do not seek dismissal of the claims for breach of implied warranties, violation of the MCPA, and the alternative claim for relief under other state consumer protection laws.[3] In addition, the defendants seek to dismiss all claims against Central Garden, because they argue Stanley failed to assert a basis for the parent company to be liable. Finally, the defendants argue some of the damages Stanley seeks are unavailable as a matter of law.

As discussed below, I will grant the motion to dismiss in part and deny it in part.

a.   Standard of Review

The defendants move to dismiss five counts of the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

"'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a 12(b)(6) motion, the court assumes the facts alleged in the complaint are true and draws all reasonable factual

---

[3] Stanley, however, appears not to be proceeding with this claim.

inferences in the nonmoving party's favor. *Edwards*, 178 F.3d at 244. A complaint need not

provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's]

entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

      b.  Analysis

          i.  Strict Liability

Stanley asserts three theories under which she argues she can recover in strict liability:

(1) manufacture of an unreasonably dangerous product, (2) failure to warn, and (3) defective

design. (*See* Am. Compl. ¶¶ 52–65.) The defendants confine their motion to dismiss to the

second of these theories, asserting Stanley's failure to warn claim fails because the warnings

accompanying their chew toys are adequate as a matter of law.

A manufacturer may be liable for placing a product on the market that bears inadequate

instructions and warnings or that is defective in design. *Hood v. Ryobi Am. Corp.*, 181 F.3d 608,

610 (4th Cir. 1999). If the warnings or instructions on a product are adequate, "the product is not

defective, and the plaintiff cannot recover under a theory of strict liability in tort." *Ellsworth v.

Sherne Lingerie, Inc.*, 495 A.2d 348, 356 n.12 (Md. 1985). A warning is adequate if it "explains

the risk which allegedly caused the plaintiff's injury." *Ames v. Apothecon, Inc.*, 431 F. Supp. 2d

566, 572 (D. Md. 2006) (quoting *Lee v. Baxter Healthcare, Corp.*, No. 89–2143, 1990 WL

27325, at *5 (4th Cir. Feb. 27, 1990)). But if a warning is "vague or otherwise difficult to

understand" it "shall not generally have the effect of barring a product liability claim when those

warnings go unheeded." *Lightolier, a Division of Genlyte Thomas Grp. LLC v. Hoon*, 876 A.2d

100, 111 (Md. 2005).

The duty is to give a "reasonable warning, not the best possible one." *Nolan v. Dillon*, 276 A.2d 36, 40 (Md. 1971). Indeed, a manufacturer "need not warn of every mishap or source of injury that the mind can imagine flowing from the product." *Liesener v. Weslo, Inc.*, 775 F. Supp. 857, 861 (D. Md. 1991). To decide if a warning is adequate, Maryland courts ask if the benefits of a more detailed warning outweigh the costs of requiring the change. *Ryobi*, 181 F.3d at 611. The price of more detailed warnings is greater than their printing fees; it also takes into account whether additional details will undermine the effectiveness of warnings altogether. *Id.* "Well-meaning attempts to warn of every possible accident lead over time to voluminous yet impenetrable labels—too prolix to read and too technical to understand." *Id.*; *see also Liesener*, 775 F. Supp. at 861.

In this case, it is clear that the guidelines accompanying the defendants' chew toys warned of risks from ingesting pieces of the toys. The guidelines state chew toys are "NOT intended for consumption" but that if "tiny-bristle-like projections" are ingested, they "should pass through." (Am. Compl. ¶ 17). Customers are warned that if "you think your dog swallowed a large piece of a Non-Edible Chew, take the chew away and contact you [sic] veterinarian for advice." (*Id.*). The guidelines also advise pet owners to "[f]requently inspect any chew before giving it to your dog to make sure its [sic] whole and intact, with no missing pieces. Replace a Non-Edible Chew when knuckle ends are worn down, or if it becomes too small to chew safely." (*Id.*).[4]

---

[4] The defendants' representations of the warnings differ slightly different from Stanley's. The defendants cite warnings that state "If you think your dog swallowed a piece of a Non-Edible Chew larger than ¼ inch, promptly take the chew toy away from the dog and contact your veterinarian for advice." (Defs.'s Mot. to Dismiss at 8). Stanley cites only a generic reference to "large pieces." (*See* Am. Compl. ¶ 17). Although the defendants argue this claim should be dismissed for the additional reason that Stanley fails to argue her dog, Booker, ingested a piece

Stanley argues these warnings are not "specific and comprehensive as to the hazards" of ingesting a piece of chew toy. (*Id.* ¶ 23). Alternatively, she argues the warnings are "so complex as to obscure the message in the verbiage" and that extensive marketing of the products for "POWERFUL CHEWERS" negates even adequate warnings. (*Id.*).

Maryland law does not require the best of all possible warnings, however. It requires only a reasonable warning. *Nolan*, 276 A.2d at 40. In this case, the guidelines to the Double Action Chew Toy gave consumers a reasonable warning of medical danger if their dog ingested a large piece of the toy. A warning does not need to notify the user "of the physical cause or the physiological nature of the injury he risks from the product." *Liesener*, 775 F. Supp. at 861. Here, the warnings distinguish between small particles of the chew toy, which may pass through if ingested, from larger pieces that require veterinary attention if ingested. Along with the repeated warnings for pet owners to inspect the toy and take it away from their dogs if it is damaged, this puts consumers on notice that their pets may suffer medical injury if large portions of the toy are ingested. In Maryland, this type of "general warning of danger" is legally adequate. *Id.* Accordingly, the defendants' motion to dismiss any strict liability claim based on a failure to warn will be granted.

### ii.   Negligence

Stanley alleges several theories in support of her negligence claim. These include allegations that the defendants "failed to exercise reasonable care in the design, testing, manufacture, marketing, sale and distribution of their Chew Toys," that the defendants "failed to exercise reasonable care in the labeling of the Chew Toys," and that  defendants breached a duty "to exercise reasonable care in the advertising and sale of the Chew Toys." (Am. Compl. ¶¶ 68–

---

of chew toy larger than ¼ inch, I will not do so because I am required to take the facts as represented by the plaintiff as true.

70). Again, the defendants confine their motion to the portion of the negligence claim based on a failure to warn.

Negligence claims based on a failure to warn are nearly identical to strict liability claims based on a failure to warn. *See Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 640 n.7 (Md. 1992) (noting the "overlap of negligence principles in a strict liability failure to warn case"). "Under a negligence theory the issue is whether the defendant exercised due care in formulating and updating the warning, while under a strict liability theory the issue is whether the lack of a proper warning made the product unreasonably dangerous." *Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 858 (4th Cir. 1980). In both claims, the central issue is "essentially the same: was the warning adequate?" *Id.*

As discussed above, the warning accompanying the Double Action Chew Toy was legally adequate. Accordingly, the defendants' motion to dismiss any negligence claims based on failure to warn will be granted.

iii.   Breach of Express Warranty

In Maryland, to state a claim for breach of express warranty a plaintiff must allege: "(1) a warranty existed; (2) the product did not conform to the warranty; and (3) the breach proximately caused the injury or damage." *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 223 (4th Cir. 2009) (quoting *SpinCycle, Inc. v. Burcin Kalender*, 186 F. Supp. 2d 585, 589 (D. Md. 2002)).

Under Maryland law, any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Md. Code Ann., Com. Law § 2–313(1)(a). In addition, descriptions or samples that are part of the basis of the bargain create an express warranty that the goods shall conform to those descriptions or samples. *Id.* § 2–

9

313(1)(b)–(c). A seller does not need to use the words "warrant" or "guarantee" or even specifically intend to make a warranty. *Id.* § 2–313(2)

The amended complaint does not point to any specific statement of fact or promise by the defendants that Stanley alleges was false. (*See* Am. Compl. ¶¶ 82–86). Instead, Stanley appears to base her claim on the assertion that the defendants "through their marketing program, promotional activities, product labeling, package inserts, and other written and verbal assurances, expressly warranted to customers, including [Stanley] and members of the class, pet stores, and veterinarians that their Chew Toys had been shown to be safe for their intended purpose and recommended by veterinarians." (*Id.* ¶ 83).

In her opposition, Stanley points to the statement that "Nylabone manufactures dog chews, bones, treats and toys designed to meet the chewing need of any dog—no matter the breed, size, or chew strength" and argues this statement was false. (*See* Pl.'s Opp'n at 17). But neither the opposition nor the amended complaint describe where this language is located, making it unclear whether the language was drawn from an advertisement or product packaging. (*See id.*; Am. Compl. ¶ 2). Regardless, the statement alone does not represent that the specific Nylabone product Stanley purchased was safe for her particular dog. It merely indicates Nylabone manufactures a wide range of chew toys and related products. Accordingly, the defendants' motion to dismiss the express warranty claim will be granted.

### iv.   Fraud

In Maryland, it has "long been clear that '[f]raud may consist in the suppression of the truth as well as in the assertion of a falsehood.'" *See Hoffman v. Stamper*, 867 A.2d 276, 292 n.12 (Md. 2005) (quoting *Schnader v. Brooks*, 132 A. 381, 383 (Md. 1926)). To state a claim for fraudulent concealment, a plaintiff must show: (1) the defendant owed a duty to the plaintiff to

disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended

to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the

concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*Green v. H & R Block, Inc.*, 735 A.2d 1039, 1059 (Md. 1999); *see also My Nat. Tax & Ins.*

*Servs., Inc., v. H & R Block Tax Servs., Inc.*, 839 F. Supp. 2d 816, 820 (D. Md. 2012).

A plaintiff must prove *either* that the defendant had a duty to disclose a material fact and

failed to do so, or that the defendant concealed a material fact for the purpose of defrauding the

plaintiff. *Odyssey Travel Center, Inc., v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 629 (D. Md.

2003) (citing *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 551 (D. Md.

1997)). Absent a fiduciary relationship requiring disclosure, a plaintiff must show the defendant

"took affirmative action to conceal the cause of action and that the plaintiff could not have

discovered the cause of action despite the exercise of reasonable diligence." *Frederick Road Ltd.*

*P'ship v. Brown & Strum*, 756 A.2d 963, 976 n.14 (Md. 2000). Thus, Maryland has recognized a

claim for fraudulent concealment when a property seller without any independent duty to

disclose actively and with the intent to deceive concealed a material fact about the property from

a purchaser. *Rhee v. Highland Dev. Corp.*, 958 A.2d 385, 391 (Md. Ct. Spec. App. 2008).

In this case, Stanley alleges that the defendants "affirmatively conceal[ed] and fail[ed] to

disclose adverse reactions" to the chew toys. (Am. Compl. ¶ 95). Stanley further alleges the

"[d]efendants' misrepresentations, suppression and omissions were made in order to induce the

general public . . . to purchase Chew Toys." (*Id.* ¶ 103). Stanley asserts that through studies of

the chew toys and complaints from pet owners, the defendants had ample knowledge of the risks

of their toys but continued to market their toys as safe for "powerful chewers" and "vet

recommended." (*Id.* ¶¶ 87–105). Taken in the light most favorable to Stanley, these allegations

are specific enough to state a cause of action for fraudulent concealment. Accordingly, the defendants' motion to dismiss the fraud claim will be denied.

v.   Unjust Enrichment

In Maryland, a claim of unjust enrichment has three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) (quoting *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)). Courts have emphasized, however, that such claims "may not be reduced neatly to a golden rule" and can be difficult to define. *Id.* at 351–52.

The defendants argue that because an unjust enrichment claim is equitable in nature, it is only available when there is no adequate remedy at law. Because Stanley alleges several legal claims for which she seeks money damages, the defendants assert that equitable relief should not be available, and the claim should be barred as a matter of law. The Maryland Court of Appeals, however, has recognized that unjust enrichment claims seeking money damages may be treated as claims at law. *See Ver Brycke v. Ver Brycke*, 843 A.2d 758, 775 (Md. 2004) (holding claims for unjust enrichment and promissory estoppel "were claims at law because they were claims seeking the remedy of restitution for money"). Even where unjust enrichment is a claim in equity, plaintiffs may plead claims for both legal and equitable relief, as equitable relief may become available if no adequate legal remedy remains. Accordingly,  the defendants' motion to dismiss the unjust enrichment claim will be denied.

      c.   Motion to Dismiss Central Garden as a Party

Stanley seeks to pierce the corporate veil to make parent company Central Garden liable

for the acts of TFH, which manufactures the Nylabone-branded chew toys.

In Maryland, the standard for piercing the corporate veil was set out in *Bart Arconti &*

*Sons, Inc. v. Ames-Ennis, Inc.*:

> The most frequently enunciated rule in Maryland is that although courts
> will, in a proper case, disregard the corporate entity and deal with
> substance rather than form, as though a corporation did not exist,
> shareholders generally are not held individually liable for debts or
> obligations of a corporation except where it is necessary to prevent fraud
> or enforce a paramount equity.

340 A.2d 225, 234 (Md. 1975) (internal citations omitted). It remains the law that to pierce a

corporate veil, a plaintiff must show fraud or paramount equity. *See Baltimore Line Handling*

*Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (D. Md. 2011). Stanley advances arguments under both

rationales.

Stanley first argues this court should pierce the corporate veil because of fraud. Maryland

courts require parties seeking to pierce the corporate veil by alleging fraud to meet a higher

standard and make a more vigorous factual showing than do other jurisdictions. *See Baltimore*

*Line Handling Co.*, 771 F. Supp. at 553. To "find that the corporate cloak has been used to

perpetuate fraud, Maryland courts have looked for clear and convincing evidence of 'deliberate

intention and purpose of cheating and defrauding.'" *Id.* (citing *Colandrea v. Colandrea*, 401

A.2d 480, 486 (Md. Ct. Spec. App. 1979)).

Stanley's fraud argument is based on her allegations that TFH's conduct toward

consumers of their chew toys constituted fraud. But those allegations are beside the point: in

order to pierce the veil, Stanley must show that the *corporate cloak* has been used to perpetuate

fraud, not simply that a related corporation perpetrated any type of fraud. Stanley does not argue

that Central Garden used its relationship with TFH as a vehicle for fraud, so I will deny Stanley's

motion to pierce the corporate veil on this ground.

Stanley also argues the court should pierce the corporate veil because of a paramount

equity. The Fourth Circuit has stated that:

> When substantial ownership of all the stock of a corporation in a single
> individual is combined with other factors clearly supporting disregard of
> the corporate fiction on grounds of fundamental equity and fairness, courts
> have experienced "little difficulty" and have shown no hesitancy in
> applying what is described as the "alter ego" or "instrumentality" theory in
> order to cast aside the corporate shield and to fasten liability on the
> individual stockholder.

*DeWitt Truck Bros. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 686–87 (4th Cir. 1976); *see

also Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 603 A.2d 1301, 1318 (Md. Ct. Spec.

App. 1992). Factors that may be used in deciding whether the doctrine of paramount equity

applies include "whether the corporation was grossly undercapitalized, . . . the dominant

stockholder's siphoning of corporate funds, ... the absence of corporate records, and the

corporation's status as a facade for the stockholders' operations." *DeWitt Truck Bros.*, 540 F.2d at

686–87; *Travel Comm., Inc.*, 603 A.2d at 1318-19. Stanley argues Central Garden "used the

funds from [TFH] for its own expenditures," and that Nylabone products feature the branding of

both TFH and Central Garden. (Pl.'s Opp'n at 22–23). Stanley argues this conduct amounts to a

disregard for the proper formalities of the corporation. These allegations are inadequate to find

that Central Garden and TFH are not distinct corporate entities. Maryland courts have been very

reluctant to pierce the corporate veil on grounds other than fraud. Even in *Bart Arconti*, where

two brothers attempted to evade a lawsuit against them by allowing their company to become

dormant and funneling new business to two new companies, the court declined to pierce the

corporate veil. *Bart Arconti*, 340 A.2d at 231; *see also Hildreth v. Tidewater Equipment Co.*,

14

*Inc.*, 838 A.2d 1204, 1212 (Md. 2003) (reviewing *Bart Arconti* and discussing the high bar for

veil piercing in Maryland). Accordingly, the defendants' motion to dismiss Central Garden as a

party will be granted.

        d.  Damages Claims

       The defendants argue several of the damages Stanley seeks are unavailable as matter of

law.

           i.  Damages for Harm to Pets

        The defendants argue Maryland law limits compensatory damages in cases of tortious

injury to a pet to the reasonable and necessary cost of veterinary care. *See* Md. Code Ann., Cts.

& Jud. Proc. § 11–110. If the pet dies, damages can include the fair market of the pet while alive.

*Id.* In either event, damages cannot exceed $7,500. *Id.* § (b)(2). Therefore, the defendants argue,

Stanley cannot recover damages beyond this statutory limit, nor can she recover non-economic

damages, such as mental anguish.

       Section 11–110 is little used, but by its own language appears to apply in all tort cases

alleging injury to a pet. The only reported case applying the provision is *Ferrell v. Benson*, in

which the plaintiff sued for the death of her cat and sought $150,000 in compensatory damages

and additional punitive damages. 720 A.2d 583, 584 (Md. 1998). The trial court held § 11–110

limited the plaintiff's recovery, even for claims based on intentional torts, and precluded punitive

damages. *Id.* at 584. The Maryland Court of Appeals never reached the merits of the case,

however, and only took up procedural questions. *Id.* at 585.

       Stanley attempts to evade § 11–110's limitation by arguing that she does not "merely

seek to recover damages for the harm to a pet" but also "economic damages resulting from

damage to the [defendants'] product itself." (*See* Pl.'s Opp'n at 23–24). This argument is

unavailing. The basis of all of Stanley's tort claims is that her dog was injured by the defendants'

product. Accordingly, I find § 11–110 applies to her strict liability, negligence, and fraud claims.

However, because § 11-110 applies only in tort, the statute does not affect Stanley's

implied warranty, unjust enrichment, and MCPA claims. Nevertheless, Stanley has not

demonstrated that she is entitled to recover non-economic damages under these claims either.

First, the remedy for unjust enrichment is not damages, but restitution, so a recovery under

Stanley's unjust enrichment claim would be limited to any amount the defendants are found to

have unjustly received. See *Hill*, 936 A.2d at 351-52. Second, a plaintiff may seek damages for

"emotional distress and mental anguish" under the MCPA only "'if there was at least a

consequential physical injury,' in the sense that 'the injury for which recovery is sought is

capable of objective determination.'" *Sager v. Housing Comm'n of Anne Arundel County*, Civil

No. ELH-11-2631, --- F. Supp. 2d ---, 2012 WL 1233016, *15 (D. Md. April 11, 2012) (quoting

*Hoffman v. Stamper*, 867 A.2d 276, 296 (Md. 2005) ). Stanley has not alleged any specific

physical injury resulting from her distress over her pet's illness, so she may not recover for

mental anguish under her MCPA claim. Similarly, Stanley has not alleged a specific physical or

emotional injury recoverable under her implied warranty claim. *See* Md. Code. Ann. Com. Law

§ 2-715(b) (allowing recovery for "[i]njury to person . . . proximately resulting from any breach

of warranty"); *cf. Yong Cha Hong v. Marriott Corp.*, 656 F. Supp. 445, 446 (D. Md. 1987)

(recognizing claim for "permanent injuries" caused by "great physical and emotional upset").

ii.   Treble Damages

The defendants argue there is no basis on which Stanley can seek treble damages, which

are only available when specifically provided for by statute. Stanley alleges only two statutory

causes of action, breach of express warranty and violation of the Maryland Consumer Protection

Act. As discussed above, the breach of express warranty claim will be dismissed. The MCPA

simply allows plaintiffs "to recover for injury or loss" and a possible award of attorney's fees.

*See* Md. Code Ann., Com. Law § 13–408(b); *see also Sager*, 2012 WL 1233016, at *15 (noting

"there is no statutory provision in the [M]CPA for treble damages"). Indeed, Stanley does not

argue to the contrary. Accordingly, I agree that Stanley has failed to allege a basis for treble

damages.

### iii.   Punitive Damages

Stanley seeks punitive damages on her strict liability, negligence, and fraud claims.[5] (*See*

Am. Compl. ¶¶ 65, 74, 105).  The defendants argue such damages are barred by § 11–110. The

trial court in *Ferrell* treated § 11–110 as limiting intentional tort claims, and I agree with that

limitation in this case. Even Stanley's fraud claim requires that she suffered injury as a result of

the fraud. *See Green*, 735 A.2d at 1059 (listing, as an element of a fraudulent concealment claim

that "the plaintiff suffered damages as a result of the defendant's concealment."). Stanley's

injury in this case is to her dog, Booker. Accordingly, the limits of § 11–110 apply to all tort-

based claims in this case and Stanley may not seek punitive damages.

### III.   Class Claims

A court need not wait until class certification is sought to determine whether a party

complies with Fed. R. Civ. P. 23. *See Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949

(6th Cir. 2011) (noting that either plaintiff or defendant may move for determination of whether

the action may be certified); *Ross-Randolph v. Allstate Ins. Co.*, Civil No. DKC-99–3344, 2001

WL 36042162, at *4 (D. Md. May 21, 2001) (granting a motion to strike class allegations). If a

---

[5] Although Stanley does not appear to seek punitive damages under the MCPA, it is clear that no
punitive damages may be awarded under that statute. *See Hoffman*, 867 A.2d at 304 (2003)
("[p]unitive damages may not be awarded in an action brought under § 13–408").

plaintiff fails to allege sufficient facts to meet the requirements of Rule 23, the court can order "the pleadings be amended to eliminate allegations regarding the representation of absent persons . . . ." Fed. R. Civ. P. 23(d)(4).

Stanley seeks to sue on behalf of a class of all persons who purchased and/or paid for the defendants' chew toys. (Am. Compl. ¶ 40). She defines that class as "[a]ll persons who purchased dog chew toys designed to clean dogs' teeth that were manufactured and/or marketed by the defendants within the applicable statute of limitations period and injured their dog or dogs." (*Id.*). Stanley concedes the class should be confined to consumers in Maryland, despite her initial request to certify a nationwide class. The defendants argue Stanley cannot satisfy Rule 23 and therefore move to strike all class allegations. For the reasons granted below, the motion will be granted in part and denied in part.[6]

Fed R. Civ. P. 23 sets out the two-step process a court follows in determining whether an action can proceed as a class. First, the class must satisfy the four prerequisites in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). If those requirements are met, the court must then determine if the class fits into one of the categories outlined in Rule 23(b). *Id.*

    a.  Rule 23(a) prerequisites

The defendants put forward few arguments regarding Stanley's ability to satisfy Rule 23(a)'s requirements. Because Stanley has not yet moved for certification, I need not decide if

---

[6] Although I will deny in part  defendants' motion to strike class allegations, I am not granting Stanley's request for certification at this time. As the Supreme Court has made clear, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate [her] compliance with the Rule—that is [she] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2542, 2551 (2011) (emphasis in original). Because Stanley has not yet made this showing, I will deny her request for class certification without prejudice to a future motion in support of certification.

she has satisfied these prerequisites. Accordingly, I find only that the defendants have not shown

Stanley's proposed class cannot satisfy the Rule 23(a) requirements.

First, Plaintiffs do not need to specify the exact size of a potential class to satisfy the

numerosity requirement. *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D.

Md. 2006). In this case, Stanley does not allege a specific number of potential class members,

but argues there are "at least hundreds" of potential class members in Maryland. (Pl.'s Opp'n at

28). Classes of as few as 25 to 30 have been found to "raise[] the presumption that joinder would

be impracticable." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991).

Where "general knowledge and common sense" indicate the class is so large that joinder of all

members is impracticable, the numerosity requirement is satisfied. *Mitchell-Tracey*, 237 F.R.D.

at 556.

Second, the commonality, typicality, and adequacy of representation inquiries are similar

and overlapping. *See Mitchell-Tracey*, 237 F.R.D. at 557. To show commonality, there must be

"a single common question of law or fact" among class members, although members do not need

to share all issues. *Id.* Factual differences among class members will not necessarily preclude

certification "if the class members share the same legal theory." *Id.* (citing *Peoples v. Wendover

Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998)). Likewise, to show typicality the claims of

class members must be fairly encompassed by the class representative's claims. *Mitchell-Tracey*,

237 F.R.D. at 558. To demonstrate adequacy of representation, a plaintiff's interests must not be

opposed to those of other class members and the plaintiffs' attorneys must be qualified,

experienced, and able to conduct the litigation. *Id.* This inquiry focuses on "whether the absent

class members, who will be bound by the result, are protected by a vigorous and competent

prosecution of the case by someone that shares their interests." *Id.* The defendants have not demonstrated that Stanley cannot meet these requirements.

> b.   Rule 23(b) categories

The defendants focus their arguments on Rule 23(b). Stanley brings class allegations under both Rule 23(b)(2) and Rule 23(b)(3). The defendants argue she cannot satisfy either provision.

> i.   Rule 23(b)(2)

The defendants argue Stanley cannot allege a viable Rule 23(b)(2) class because she primarily seeks monetary relief. Each of Stanley's eight claims seeks monetary damages. Counts I–V seek compensatory damages. (Am. Compl. ¶¶ 64, 73, 81, 86, 104). Counts I–II and V seek punitive damages. (*Id.* ¶¶ 65, 74, 105). Counts VI–VII seek statutory damages. (*Id.* ¶¶ 118; 124). Count VIII seeks disgorgement and restitution of the defendants' profits and revenue. (*Id.* ¶ 130). Although Stanley also seeks injunctive relief, this appears incidental to her claim for money damages.

In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court made clear that Rule 23(b)(2) applies "only when a single injunction or declaratory judgment would provide relief to each member of the class. . . . [I]t does not authorize class certification when each class member would be entitled to an individualized award of money damages." 131 S.Ct. at 2557. Thus, Rule 23(b)(2) classes cannot combine classwide injunctive relief with individualized damages. *Id.* at 2558. Claims for individualized monetary damages "belong in Rule 23(b)(3)." *Id.* Accordingly, the defendants' motion to strike allegations in support of a Rule 23(b)(2) class will be granted.

ii.   Rule 23(b)(3)

In contrast to actions under Rules 23(b)(1) and (b)(2), Rule 23(b)(3) actions may be permitted in "situations in which 'class-action treatment is not as clearly called for,' but 'may nevertheless be convenient and desirable.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Adv. Comm. Notes, 28 U.S.C. App. at 697).

To allege a viable action under Rule 23(b)(3), a potential class plaintiff must show (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The predominance requirement is similar to but "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods.,* 521 U.S. at 623–24. It tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. The  defendants tailor their arguments on predominance to the specific claims Stanley advances.

First, the defendants argue products liability cases are unsuited to class resolution. They argue individual determinations of causation and damages will be required, including identifying which Nylabone product a class member bought, what type of dog was injured, whether the chew toy was appropriate for that dog, whether the dog had any pre-existing medical conditions, and the precise nature of injury the dog sustained. Such issues will also raise individual defenses of contributory negligence, comparative negligence, and assumption of risk.

Stanley responds that these issues do not necessarily preclude certification of her product liability claims. In certifying a class a district court can define the class narrowly and certify it as to certain questions only. *See Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (certifying a consumer fraud case as to questions of design defect). Individualized damage

determinations also do not preclude the conclusion that common questions of law and fact predominate. *See Gunnells*, 348 F.3d at 428; *Ward v. Dixie Nat. Life. Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010).

The fraud and related MCPA claims also present a close question. Some circuits disfavor class treatment of consumer fraud cases and mass tort actions. *Compare Pella*, 606 F.3d at 393 (stating there "is not and should not be a rule that [products liability class actions] should never be certified") *with In re St. Jude Med., Inc.*, 522 F.3d 836, 838 (8th Cir. 2008) (finding "fraud cases are often unsuitable for class treatment" because "proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations."). The Fourth Circuit has indicated that the fact-intensive individualized inquiry required to maintain a fraud claim will often preclude class certification, absent grounds for a presumption of reliance. *Gunnells*, 348 F.3d at 435-36. However, the Circuit has also made clear that it does not bar class treatment in cases where plaintiffs allege both fraud and consumer-based claims, and that district courts should ensure Rule 23(b)(3) is read to guarantee class treatment achieves "'economies of time, effort, and expense, and promote[s] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bring[ing] about other undesirable results.'" *Id.* at 424 (quoting *Amchem Prods.*, 521 U.S. at 615).

The defendants ultimately may prevail in opposing any motion for class certification later filed by Stanley. Because of the reduced scope of the remaining claims and the need for further factual development before resolving the close issues discussed above, however, the defendants motion to strike class allegations will be denied as to Stanley's strict liability, negligence, fraud, unjust enrichment, and MCPA claims.

The defendants appear to have a convincing argument, however, regarding the proposed class treatment of implied warranty claims. To state a claim for breach of implied warranty, Maryland law requires each buyer to "within a reasonable time" after discovering a breach "notify the seller of breach or be barred from any remedy." Md. Code Ann., Com. Law §§ 2–607(3)(a), 2–608(2). This notification is a prerequisite for claims of breach of implied warranty; a lawsuit cannot constitute notice of a breach under §§ 2–607, 2–608. *See Lynx, Inc. Ordnance Prods.*, *Inc.,* 327 A.2d 502, 513–14 (Md. 1974). This notification must sufficiently demonstrate to the seller that the transaction has issues and must be watched. *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011) (citing Md. Code Ann., Com. Law § 2–607, cmt. 4). Further, if a plaintiff wishes to assert a breach of implied warranty against a manufacturer, the plaintiff must notify the immediate seller of the breach. *Id.* Stanley has made no allegations that she or other potential class members gave notice either to the defendants or to the immediate sellers from whom the chew toys were purchased. Accordingly, the defendants' motion to strike the class allegations for breach of implied warranty will be granted.[7]

IV.    Conclusion

For the reasons stated above, I will grant the defendants' Motion to Dismiss in part and deny the motion in part. I will also grant the defendants' Motion to Strike Class Allegations as to any claims based on Rule 23(b)(2) and as to any claim for breach of implied warranty, and I will deny it as to all other remaining claims. Given the reduced number of claims and damages, and the withdrawal of a request to certify a nationwide class, I prefer to permit some discovery before considering the class issues further.

---

[7] It is unclear why the defendants do not seek to dismiss Stanley's breach of implied warranty claim on this ground, but the motion to dismiss does not do so.

A separate order follows.


  September 19, 2012                                    _____/s/_____
Date                                                  Catherine C. Blake
                                                      United States District Judge